Filed 9/16/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B248767 |
| | (Super. Ct. No. 2010002126) |
| Plaintiff and Respondent, | (Super. Ct. No. 2011023496) |
| | (Ventura County) |
| v. | |
| LEE EDWARD PEYTON, | |
| Defendant and Appellant. | |

Lamenting the delays associated with the orderly processing of criminal cases, Justice Macklin Fleming explained a popular way for a criminal defendant to avoid, or at least delay trial: "sidetracking." He describes this as diverting "the inquiry into a collateral issue. . . . In the operation of a railway system to sidetrack a train is to switch it from the main line to a siding. In criminal law to sidetrack a cause is to divert the accusation from the pending issue [guilt or innocence] to some other issue, any issue, and then keep the prosecution [or the trial court] so occupied in litigating the side issue that the hearing of the accusation itself comes to a halt." (*The Price of Perfect Justice,* Basic Books, Inc, (1994) at p. 54.)

Appellant is the poster boy for sidetracking. As we shall explain, the principal sidetrack diversionary tactic was attacking the trial judge, Hon. David Hirsch. But there were other sidetracking diversionary tactics leading to numerous hearings. The central

theme, however, was constant, i.e. personal attacks upon the integrity and honesty of other judges (at p. 5), the prosecutor (at pp. 9-10) and the investigating detective (at p.13) as well as other law enforcement personnel and other attorneys.

Judge Hirsch was extraordinarily patient even though appellant attacked his integrity in numerous contentious filings and hearings. Judge Hirsch and other superior court judges before whom appellant appeared were undeterred from affording appellant a fair trial in which he received due process in all its facets. We praise these judges, but with the benefit of hindsight we suggest there is a limit to which a defendant may squander public funds, stretch the use of court time to multiples of what is reasonable, and misuse judicial resources. In such cases, trial judges may lawfully terminate defendant's pro per status and bring to an end what can be characterized as his shenanigans. (See, *infra,* pp. 18-19.)

The instant sidetracking is striking in terms of the expenditure of time, public funds, and judicial resources. Appellant was charged with three pedestrian felonies. It took over three years in court to get to judgment. The record on appeal is in excess of 8000 pages. It appears to us that "lacking any defense on the merits, defendant was simply playing a game with the court by being as awkward and difficult as possible, hoping for a reversal on some technical grounds." (*People v. Hill* (1968) 268 Cal.App.2d 504, 511.) We observe that his game of "waive the lawyer" (see *People v. Weston* (1970) 9 Cal.App.3d 330, 334) was his springboard to his overall tactic to be as difficult as possible. Defiant to the end, appellant's last words to the trial court were: "When I reverse you on appeal, I will make sure to rub it in your face."

Lee Edward Peyton was convicted by jury of two counts of receiving stolen property (counts 1 & 3; Pen. Code, § 496, subd. (a))[1] and one count of identity theft (count 2; § 530.5). He admitted suffering a prior strike conviction (§§ 667, subds. (b) - (i); 1170.12, subds. (a) - (d)) and two prior prison terms (§ 667.5, subd. (b)). The trial court sentenced him to ten years eight months state prison. He appeals. We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*Counts One and Two - Receiving Stolen Property and Identity Theft*

Counts 1 and 2 arise from an October 14, 2009 Ojai auto burglary. Someone smashed Kathleen McAuliffe's van window and took her purse, cellphone, iPod, wallet, and Wells Fargo ATM card. The purse had an address book that listed her ATM identification number.

Two hours later and 30 miles away, appellant withdrew $300 from a Wells Fargo ATM in Ventura using McAuliffe's ATM card. The ATM system videotaped the transaction and purged the video after it extracted and saved still photos. Appellant was identified as the person in the ATM photos.

*Count Three - Receiving Stolen Property*

Count three arises from a November 4, 2009 auto burglary in Matilija Hot Springs near Ojai. Gilbert Manchego and his girlfriend were walking back to their car and saw a man "lurking" near it. The man ran to an older Chevrolet truck with distinctive primer spots and drove off. Manchego discovered his car window smashed and that a cell phone, red CD case, and CDs were missing. Manchego said appellant's Chevy truck looked like the truck that fled from this auto burglary.

*Police Investigation of Appellant*

Detective Victor Medina went to Benjamin Kennedy's house because appellant lived with him. Kennedy told the police about a red CD case that appellant stole from a car and hid under Kennedy's couch. The police recovered the red CD case taken in the Manchego auto burglary. They seized other stolen purses and conducted a probation search of Reyes Estrada, appellant's friend. Estrada's cell phone had text messages from "Lee" that were sent from Kennedy's phone. An October 27, 2009 text said "got a lick [i.e., auto burglary] lined up." On October 28, 2009, Lee texted "Got a lick in progress - and some cash." Kennedy confirmed that appellant was using his cell phone.

*Arrest, Refusal to be Photographed, Trial Theory*

After appellant was arrested for receiving stolen property and identity theft, he was ordered to submit to photographs of his face and head to facilitate a comparison

3

with the ATM photos.  Appellant refused to be photographed.  At trial he defended on the theory of misidentification.

*Caperton Motion to Recuse Trial Judge*

Appellant argues that the denial of his November 6, 2012 *Caperton*  motion (*Caperton v. A.T. Massey Coal Co, Inc.* (2009) 556 U.S. 868 [129 S.Ct. 2252, 173 L.Ed.2d 1208] (*Caperton*)) to disqualify Judge Hirsch violated his due process right to a fair trial.  Before that, appellant filed a series of motions and "attacks" on Judge Hirsch. We recount them in detail because they bring the November 6, 2012 *Caperton* motion into perspective.

After the case was assigned to Judge Hirsch for trial in January 2012, appellant filed the following objections and motions to disqualify him.

1.  A peremptory challenge (Code Civ. Proc., § 170.6) on February 16, 2012 that was denied as untimely.

2.  A March 1, 2012 motion to disqualify for cause (Code Civil Proc., § 170.1) alleging that Judge Hirsch was groomed in the art of judicial corruption and had a direct, personal, and substantial interest in convicting appellant.  After Judge Hirsch filed an answer, a San Bernardino superior court judge denied the motion on the ground that appellant's claims were conclusory and devoid of facts.

3.  An April 17, 2012 motion to disqualify for cause (Code Civ. Proc., § 170.1.) and a *Caperton* motion to recuse on due process grounds.  Appellant claimed that Judge Hirsch had previously recused himself and was disqualified from hearing the case. The motion was stricken on April 17, 2012 on the ground that it was factually inaccurate and untimely, disclosed no legal grounds for disqualification, and was duplicative of the prior motions.

4.  An April 18, 2012 "Objection to Judge Hirsch" for judicial misconduct, retaliation, arbitrary and capricious action, and judicial bias in violation of the due process clause.  The motion stated that appellant had filed a complaint with the Commission on Judicial Performance and that Judge Hirsch and another judge

4

improperly denied appellant's request for co-counsel.  The motion was stricken for lack of service and because it disclosed no legal ground for disqualification.

5.  A May 10, 2012 "Motion Requesting the Master Calendar Court to Take Judicial Notice and Declare the Constitutional Rights of the Defendant."  The motion stated that Judge Hirsch should be recused on due process grounds because he was biased and because appellant had filed a civil complaint against him.

6.  On May 21, 2012, appellant filed copies of his Commission of Judicial Performance complaints against Judge Hirsch and Ventura Superior Court Judges James Cloninger, Ryan Wright, Kevin DeNoce, and Donald Coleman.   Appellant also claimed that Judge Hirsch's rulings were arbitrary and retaliatory and that Judge Hirsch should be recused pursuant to *Caperton.*

7. On May 21, 2012, Judge Hirsch denied appellant's section 995 motion. At the end of the hearing, appellant threatened to file a civil rights action against Judge Hirsch and accused the court of being hostile, arbitrary and retaliatory.  Appellant argued that "based on my lawsuit, you being a defendant, you cannot be the judge. [¶]  . . .  [¶] My last objection is based on your judicial bias with regard to my lawsuit. . . .  I will be making sure that the United States marshal for the federal district court does serve you as soon as possible with my federal lawsuit against you."

8.  On June 11, 2012, appellant filed a "Statement of Disqualification of Judge Hirsch" (Code Civ. Proc., §§ 170.1, 170.3) alleging actual conflict of interest and bias by Judge Hirsch.    Appellant requested that Judge Hirsch be recused on due process/*Caperton* grounds.    Ventura County Superior Court Judge Donald Coleman denied the motion on the ground that it had been heard before, was not timely, and failed to state facts for Judge Hirsch's disqualification.  The court stated:  "Mr. Peyton, you're a pretty smart guy.  If filing of a civil suit against a judge meant the judge had to disqualify himself, people would be filing civil suits against judges all the time, disqualifying them from hearing the case."   Appellant stated that the ruling violated *Caperton* and that "I will definitely file a writ of mandate."

9. On June 19, 2012, appellant filed a copy of the Commission on Judicial Performance complaint and a copy of his civil complaint against Judge Hirsch.

10. On June 29, 2012, appellant filed a copy of his letter to Ventura County Superior Court Presiding Judge Vincent J. O'Neill, Jr. requesting that Judge Hirsch be disqualified pursuant to *Caperton.* The letter stated that appellant was investigating the Ventura County judiciary and collecting obstruction of justice evidence for the United States Department of Justice.

The November 6, 2012 *Caperton* motion conclusionally claimed that Judge Hirsch conducted an ex parte hearing in an unrelated criminal case (*People v. Medina,* Ventura County Superior Ct. Case No. 200902432) with Attorneys Wippert and Bramson who allegedly wanted to interview appellant concerning a federal undercover investigation. The motion alleged that Judge Hirsch "leaked" appellant's identity to the media after appellant accused Judge Hirsch of judicial corruption. He repeated his claim that because he was Muslim and Judge Hirsch was Jewish, Judge Hirsch was prejudiced against him. According to appellant, Judge Hirsch's "leaking" appellant's name to the press put his life in danger and was done because of appellant's religious beliefs. This, according to appellant, "crossed the line" and "Allah gave me the full holy right to act in return in aggression . . . by any means I choose . . . I have chosen to act in aggression against Judge Hirsch . . . with my brains and legal applications. . . ."

He also accused Judge Hirsch of engaging in misconduct when he asked appellant's then trial attorney as to count 3: "What would it take to make Mr. Peyton's cases go away?" This *Caperton* motion, like the prior motions to disqualify, stated that appellant had sued Judge Hirsch and had filed complaints with the California Commission on Judicial Performance. None of these claims were supported by adequate declarations.

Summarily denying the *Caperton* motion, Judge Hirsch found: "The allegations in this motion are absurd. The alleged facts by defendant are fantasy. It's merely another attempt to file a [Code of Civil Procedure section] 170.1 [motion] which

6

was denied on its merit some time ago and another attempt at the civil lawsuit which was summarily dismissed.  So this motion is denied."

*Caperton*

A criminal defendant has a due process right to a fair trial by an impartial judge.  (*Caperton*, *supra,* 556 U.S. at p. 876 [129 S.Ct. at p. 2259].)  In *Caperton*, a West Virginia appellate justice refused to recuse himself from a case involving a $50 million damage award against a coal company.  The justice cast the deciding vote to overturn the award after the coal company's chairman contributed $3 million to the justice's election campaign.  The United States Supreme Court held:  "On these extreme facts the probability of actual bias rises to an unconstitutional level" and compelled a judicial disqualification. (*Caperton*, *supra,* 556 U.S. at pp. 886-887 [129 S.Ct. at p. 2265].)  The court noted that most states have judicial conduct codes to eliminate even the appearance of partiality.  (*Id.*, at p. 888 [129 S.Ct. at p. 2266].) "Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution."  (*Id.*, at p. 890 [129 S.Ct. at p. 2267].)

California state courts follow the same rule.  *Caperton* makes " it abundantly clear that the due process clause should not be routinely invoked as a ground for judicial disqualification.  Rather, it is the exceptional case presenting extreme facts where a due process violation will be found. [Citation.]  Less extreme cases - including those that involve the mere appearance, but not the probability, of bias - should be resolved under more expansive disqualification statutes and codes of judicial conduct. [Citation.]" (*People v. Freeman* (2010) 47 Cal.4th 993, 1005. )

Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii) provides for the disqualification of a judge based on the appearance of  bias.  (*People v. Cowan* (2010) 50 Cal.4th 401, 455-456.)  But under *Caperton* the due process clause operates more narrowly.  " ' [W]hile a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias

7

sufficient. Instead, based on an objective assessment of the circumstances in the particular case, there must exist " 'the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable.' " [Citation.]' " (*People v. Cowan, supra,* 50 Cal.4th at p. 456.)

*Caperton Denial*

Appellant's November 6, 2012 *Caperton* motion was a sophomoric rehashing of the previous motions in which appellant falsely accused Judge Hirsch of judicial misconduct and filed a civil complaint in an attempt to manufacture good cause for the judge's recusal. Appellant argues that Judge Hirsch erred in not transferring the *Caperton* motion to another judge for an evidentiary hearing. (See *Hurles v. Ryan* (9th Cir. 2013) 706 F.3d 1021, 1038 [trial court's determination of facts without evidentiary hearing not entitled to deference].) Appellant's motion was defective on its face, largely duplicative, and based on false accusations that had been rejected at prior hearings. It was devoid of new facts and did not demonstrate good cause for a hearing before another judge. Transfer to another court for yet another hearing would have been quintessential sidetracking. We accordingly reject the argument that denial of transfer to another judge gave rise to a structural defect or due-process violation. (*See Caperton, supra,* 556 U.S. at pp. 877-878 [129 S.Ct. at p. 2260] [requiring high probability of actual bias or direct pecuniary interest in order to find automatic disqualifying due-process violation].)[2]

Where a defendant's motion to disqualify for cause is denied, the defendant must seek writ review within 10 days of the order. (Code Civ. Proc., § 170.3, subd. (d); *People v. Hull* (1991) 1 Cal.4th 266, 275.) Appellant was aware of the rule. On June 11, 2012 appellant said "I will definitely file a writ of mandate" after the trial court denied a similar *Caperton* motion. (*Ante* p. 5.) "Section 170.3(d) applies to all *statutory* judicial disqualification claims - even those claims based on statutory provisions that, like section

---

[2] We need not, and do not, decide whether a good faith *Caperton* motion supported by an evidentiary showing, is to be heard by a different judge. Here there was no such showing.

170.1, subdivision (a)(6)(C), appear to codify due process grounds for relief . . . ." (*People v. Brown* (1993) 6 Cal.4th 322, 335.) Having forfeited the writ remedy, appellant "cannot simply fall back on the narrower due process protection [of *Caperton*] without making the heightened showing of a probability, rather than the mere appearance, of actual bias to prevail." (*People v. Freeman, supra,* 47 Cal.4th at p. 1006.)

Here the last *Caperton* motion was consistent with appellant's "game plan" to jettison Judge Hirsch. It was filed in bad faith. Summary denial of the motion was not a due process violation within the meaning of *Caperton*. "This case does not implicate any of the concerns - pecuniary interest, enmeshment in contempt proceedings, or the amount and timing of campaign contributions - which were the factual bases for the United States Supreme court's decisions in which it found that due process required judicial disqualification." (*People v. Freeman, supra,* 47 Cal.4th at p. 1006.)

*Claimed Vindictive Prosecution*

Appellant claims that the prosecution of count 3 (receiving stolen property; the CD case) was vindictive and retaliatory. It was filed as a new case on June 30, 2011 (Case No. 2011023496, "the second case"), 17 months after appellant was charged with receiving the stolen ATM card and identity theft (Case No. 2010002126, "the first case"). The cases were consolidated on December 7, 2012 .

Appellant asserts that "the second case" was filed in retaliation for his June 26, 2011 letter to Deputy District Attorney Brian Weilbacher and his communications in the *People v. Medina* case. Appellant accused Weilbacher of obstructing justice, tampering with evidence, and lying to a judge. At a January 30, 2012 hearing on the motion to dismiss, appellant's appointed attorney on count 3 argued that appellant "was pressuring, pressing, and . . . causing the prosecution a lot of headaches. And then finally when he wrote that [June 26, 2011] letter . . . to the prosecution, indicating that he was going to report them appropriately, [that] he was going to name them in a lawsuit, et cetera,[and] it was immediately after that the second case was filed [on June 30, 2011.]" The prosecutor stated that appellant's June 26, 2011 letter was date stamped and not

9

received until July 1, 2011.  Denying the motion to dismiss, the trial court found that appellant had not made a prima facie case of retaliation or vindictive prosecution.[3]

The trial court reasonably concluded that the 17 month delay in filing "the second case" was not retaliatory or vindictive.  Because the retaliation allegedly occurred before commencement of trial, there is no presumption of vindictive prosecution.  (*People v. Bracey*  (1994) 21 Cal.App.4th 1532, 1544.)  Appellant points to no evidence that the charging decision was motivated by a desire to punish appellant for doing something the law plainly allowed the prosecutor to do.  (*Id.*, at p. 1549; *United States v. Goodwin*  (1982) 457 U.S. 368, 384 [73 L.Ed.2d 74, 87]; *People v. Jurado* (2006) 38 Cal.4th 72, 98.)

Assuming that appellant's June 26, 2011 letter was the exercise of a legitimate First Amendment right, Weilbacher testified, and the trial court believed, that the prosecutor did not receive the letter until after "the second case" was filed.  There is no evidence that Weilbacher's decision to charge appellant with receiving stolen property (count 3) was retaliatory or vindictive.  Nor is it plausible that appellant's claimed communications with counsel in *People v. Medina* resulted in a retaliatory prosecution.  Appellant did not contact Medina's attorneys until December 2011, more than five months after "the second case" was filed.  A claim of vindictive prosecution, standing alone, is not a substitute for evidence.  (*People v. Bracey, supra,* 21 Cal.App.4th at p. 1549.)  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file . . . generally rests entirely in his discretion."  (*Bordenkircher v. Hayes* (1978) 434 U.S. 357, 364 [54 L.Ed.2d 604, 611].)

---

[3] Consistent with is previous corruption claim against Judge Hirsch, appellant accused Judge Hirsch of knowing that the date stamp was falsified and that Judge Hirsch "endorsed Weilbacher's falsification of evidence."

*ATM Photos*

Appellant argues that the ATM photos were hearsay and improperly received as a business record. We review for abuse of discretion. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Jennifer Ressler, a Wells Fargo financial fraud investigator, testified that the ATM system videotaped the transaction and extracted still photos from the video before law enforcement contacted Wells Fargo about the ATM withdrawal. On February 9, 2010, about three months after the McAuliffe auto burglary, Ressler received a request from Ventura County Sheriff's Detective Mark Burgess to see the ATM photos. Ressler copied the photos and forwarded them to Detective Burgess.

The trial court did not abuse its discretion in admitting the ATM photos as a business record. Pursuant to Evidence Code section 250, photos and video recordings with imprinted data are writings. Evidence Code section 1271 states "Evidence of a writing made as a record of an act . . . is not made inadmissible by the hearsay rule when offered to prove the act . . . if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) . . . at or near the time of the act . . . [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method of preparation were such as to indicate its trustworthiness."

Here the ATM photos were computer generated and maintained by Wells Fargo to track customer transactions. Ressler's job duties required that she know how the ATM system worked and how to extract the ATM photos. Ressler possessed sufficient knowledge to explain how Wells Fargo maintained and used the photos in the regular course of business. (*People v. Lugashi* (1988) 205 Cal.App.3d 632, 640.) Because the ATM photos were computer generated, foundational testimony showing the accuracy and reliability of the photos was not required. (*People v. Martinez* (2000) 22 Cal.4th 106, 132.)

Evidence Code section 1553, subdivision (a) provides that a printed representation of images stored on a video or digital medium is presumed to be an

11

accurate representation of the images it purports to represent. Section 1552, subdivision (a) provides a similar presumption for a printed representation of computer information. As applied, the evidentiary presumptions support the finding that the ATM photos are an accurate representation of the ATM transaction. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 269 [traffic camera photos are not hearsay and don't implicate the Sixth Amendment right to confrontation.])

Appellant's argument that the ATM photos violate the Sixth Amendment Confrontation Clause is equally without merit. The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature and made in contemplation of a criminal prosecution. (*Crawford v. Washington* (2004) 541 U.S. 36, 51-52 [158 L.Ed.2d 177, 193]; *Williams v. Illinois* (2012) 567 U.S. __, __ [132 S.Ct. 2221, 2232].) When Ressler sent the photos to Detective Burgess, appellant was not a suspect or in custody. (*Id.*, at p. ___ [132 S.Ct. at p. 2228].) None of the ATM photos were testimonial statements. This is so because the computer controlling the ATM camera "automatically generates and imprints data information on the photographic image, [and] there is . . . no statement being made by a person regarding the data information so recorded. Simply put, '[t]he Evidence Code does not contemplate that a machine can make a statement.' [Citations.]" (*People v. Goldsmith, supra,* 59 Cal.4th at p. 274.) Because an ATM machine cannot be cross-examined, the receipt of machine-generated ATM photos into evidence does not violate the Confrontation Clause. (*People v. Lopez* (2012) 55 Cal.4th 569, 583.)

*Evidence that Appellant Was Implicated In Recent Auto Theft*

Appellant argues that his due process rights were violated when Detective Medina testified that Ricardo Gutierrez implicated appellant in a recent auto theft. After Detective Medina identified appellant in the ATM photos, the detective questioned Gutierrez about a recent auto theft. Detective Medina stated that Gutierrez "implicated" himself, appellant, and Reyes Estrada. The jury was instructed that the testimony was not admitted for its truth but to demonstrate how and why Detective Medina's conducted the

12

investigation. Appellant did not object and is precluded from arguing that the Confrontation Clause was violated. (*People v. Tafoya* (2007) 42 Cal.4th 147, 166; *People v. Alvarez* (1996) 14 Cal.4th 155, 186.)

On the merits, the Sixth Amendment Confrontation Clause is not implicated where an out-of-court statement is received for a nonhearsay purpose. (*People v. Cage* (2007) 40 Cal.4th 965, 975, fn. 6; *People v. Combs* (2004) 34 Cal.4th 821, 843-844.) Appellant theorized that Detective Medina was "fixated" on him and that it affected the detective's ability to conduct a competent investigation. Gutierrez's statement about recent auto theft was not admitted to prove the truth of the matter asserted but to explain why Detective Medina asked Gutierrez to wear a "wire" and record a conversation with appellant. The jury received a limiting instruction and was instructed at the conclusion of the trial that evidence admitted for a limited purpose was not to be considered for any other purpose. (CALCRIM 303.) It is presumed that the jury understood and followed the instructions. (*People v. Fauber* (1992) 2 Cal.4th 792, 823-824.)

### Sua Sponte Instruction on Accomplice Testimony

Appellant argues that the trial court erred in not sua sponte instructing that accomplice testimony should be viewed with caution. (CALCRIM 334, 335.) But none of the crimes on which appellant was tried and convicted involved an accomplice. Appellant asserts that the jury should have been given the opportunity to determine whether Kennedy and Gutierrez were accomplices even though they were not involved in the theft of McAuliffe's and Manchego's property. The trial court had no sua sponte duty to give an instruction that was argumentative, potentially confusing, or not supported by substantial evidence. (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

### Instruction on Consciousness of Guilt

Appellant next contends that he was denied due process of law because the jury was instructed that it could infer consciousness of guilt based on his refusal to be photographed. (CALCRIM 371.) The jury received a CALCRIM 371 instruction that

13

"[i]f the defendant tried to hide evidence by refusing to be photographed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant made such an attempt, it's up to you to decide its meaning and importance.  However, evidence of such an attempt cannot prove guilt itself."

Appellant contends that CALCRIM 371 is a pinpoint instruction that violates his right to due process by lessening the prosecution's burden of proof.  Our Supreme Court has rejected similar arguments.  (*People v. Jackson* (1996) 13 Cal.4th 1164, 1123-1224 [rejecting similar contention as to CALJIC 2.06 and 2.52, the precursors of CALCRIM 371].)  It is well settled that the violation of a court order can support an inference of consciousness of guilt.  (*People v. Watkins* (2012) 55 Cal.4th 999, 1027 [defendant's refusal to participate in a lineup]; *People v. Farnam* (2002) 28 Cal.4th 107, 164 [refusal to provide court ordered hair and blood sample]; *People v. Ellis* (1966) 65 Cal.2d 529, 536-539 [defendant's refusal to "display his voice" so witness could identify defendant].)  Under state law and the federal Constitution, it makes no difference that appellant believed he had the right to refuse a court order.  (*People v. Farnam, supra,* 28 Cal.4th at p. 165.)

A reasonable trier of fact could infer that appellant refused to be photographed in order to hide evidence.  (See e.g., *People v. Yeoman* (2003) 31 Cal.4th 93, 131.)  "Clearly there was '*some evidence* in the record that, if believed by the jury, would sufficiently support the suggested inference. [Citations.]"  (*People v. Watkins*, *supra,* 55 Cal.4th at pp. 1027-1028.)  The CALCRIM 371 instruction cautioned that certain types of deceptive or evasive behavior could indicate consciousness of guilt but was not of itself sufficient to prove defendant's guilt.  It did not lessen the prosecution's burden of proof.  (*People v. Coffman* (2004) 34 Cal.4th 1, 102; *People v. Jackson* (1996) 13 Cal.4th  1164, 1123.)

Appellant complains that the prosecutor commented on appellant's refusal to be photographed.  The references were brief and there was no objection thereto.  The prosecutor told the jury:  "What do we know about the defendant?  Refused to be

14

photographed. Is that a consciousness of guilt? That's for you to decide. There's a jury instruction that tells you you can consider it as a consciousness of guilt. Why wouldn't someone want to be photographed?" CALCRIM 371 cautioned that appellant's conduct "may show" that appellant was aware of his guilt but the refusal to be photographed "cannot prove guilt by itself." (See *People v. Valdez, supra,* 32 Cal.4th at pp. 138-139.) The cautionary language mitigated any possible prejudice. (*Ibid*.) "The inference of consciousness of guilt from . . . suppression of evidence is one supported by common sense, which many jurors are likely to indulge even without an instruction." (*People v. Holloway* (2004) 33 Cal.4th 96, 142.) The jury compared the ATM photos with appellant's physical appearance at trial. They factually found that appellant was the person in the ATM photos.

### Other Crimes Evidence

Prior to trial, the trial court granted the prosecution's motion to admit evidence of other theft-related offenses to show identity, intent, common scheme, or motive. (Evid. Code, § 1101, subd. (b).) It was stipulated that appellant knowingly possessed stolen property on two prior occasions.[4]

Appellant claims that the other crimes evidence was inflammatory because it involved stolen property similar to the current offenses, i.e., an ATM card and a CD case. Those items, however, are common theft items and probative that appellant possessed the ATM card and CD case with the knowledge that they were stolen. (See *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302 [crime of receiving stolen property requires actual knowledge that property is stolen].) The trial court did not abuse its discretion in concluding that the probative value of the evidence outweighed the

---

[4] It was stipulated that BJ Aragon's car was burglarized on December 12, 1999, and that a credit card was taken. On December 17, 1999, the police found the credit card in appellant's car. When questioned by the police, appellant denied committing the burglary but acknowledged that he was in possession of a stolen credit card. Appellant also stipulated that he stole a CD case from a car on May 6, 2003, and that the CD case was in his possession on May 8, 2003.

potential for prejudice.  (Evid. Code, § 352; *People v. Ewoldt* (1994) 7 Cal.4th 380, 404-406. )

Appellant claims that the other crimes evidence violated his due process rights but no federal due process rights are implicated where the disputed evidence is relevant and admissible on the issue of identity, knowledge, intent, or common plan. (*People v. Catlin* (2011) 26 Cal.4th 81, 122-123; *People v. Martinez* (2003) 113 Cal.App. 4th 400, 413-414.)  The routine application of state evidentiary laws does not implicate a defendant's constitutional rights.  (*People v. Lewis* (2009) 46 Cal.4th 1255, 1289.)

Appellant argues that the other crimes evidence is nothing more than propensity evidence.  The jury was instructed that the other crimes evidence could only be considered to show identity, intent, common plan, or motive.  (CALCRIM 375.)  It was instructed not to consider the evidence for any other purpose and that it was not to conclude that appellant had a bad character or was predisposed to commit crimes.  On review, it is presumed that the jury understood and followed the instruction.  (*People v. Holt* (1997) 15 Cal.4th 619, 677.)  The alleged error, if any, in admitting the other crimes evidence was harmless.  (*People v. Marks* (2003) 31 Cal.4th 197, 226-227; *People v. Mungia* (2008) 44 Cal.4th 1101, 1131-1132.)  Appellant makes no showing that the other crimes evidence was "so extraordinarily prejudicial, and of so little relevance to guilt, that it threaten[ed] to sway the jury to convict regardless of defendant's actual guilt."  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

*Pitchess Motion*

Appellant requests that this court review the in camera proceedings in which the trial court denied appellant's motion for the discovery of the investigating officers' personnel records.  (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)  We have reviewed the sealed transcripts of the proceedings and conclude that the trial court did not abuse its discretion in denying discovery.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330; *People v. Mooc*  (2001) 26 Cal.4th 1216, 1232.)

16

*Consecutive Sentence - Count 2*

Appellant was sentenced to eight years state prison for receiving the stolen ATM card (count 1). He argues that the 16 month consecutive sentence on count 2 for identity theft should be stayed because the crimes arise from a single, indivisible course of conduct. (§ 654; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

McAuliffe's ATM card was stolen in Ojai sometime after 9:00 p.m. and used by appellant to withdraw money from an ATM 20 miles away in Ventura at 11:10 p.m. Appellant took possession of the stolen ATM card and had the opportunity for reflection. He formed a new criminal intent before he used the victim's personal identification number to withdraw money from the ATM. (See e.g., *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289-1290.) The trial court found that "identity theft can be committed without the 496 [i.e., receiving stolen property]" and that "[section] 654 is inapplicable to Counts 1 and 2. They are separate and distinct acts. The 496 was committed and completed before the 530.5." The trial court's express factual finding is supported by the evidence and is binding on appeal. (e.g. *People v. Holly* (1976) 62 Cal.App.3d 797, 804.) The sentence on count 2 is consistent with section 654 which is to ensure that the defendant's punishment is commensurate with his culpability. (*People v. Correa* (2012) 54 Cal.4th 331, 341.) " 'A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' [Citation.]" (*Ibid*.)

*Cumulative Error*

Appellant argues that that the cumulative effect of the alleged errors denied him a fair trial. As our Supreme Court has stated on several occasions, " ' ' 'a defendant is entitled to a fair trial but not a perfect one.' " " ' " (*People v. Marshall* (1990) 50 Cal.3d 907, 945.) Our review of the record discloses that none of the purported errors, either singularly or cumulatively, denied appellant a fair trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1056; *People v. Tully* (2012) 54 Cal.4th 952,1061.)

17

*Recalcitrant Farretta Defendant*

As we indicated at the outset, the trial court can be praised for its patience in letting appellant have his day in court. The problem is, however, that appellant had too many days in court. The trial court has an obligation to safeguard the right of the parties in the case then pending. But other parties are waiting to have their day in court. Proper case management is essential to the over-all administration of justice. Here, the trial court and other trial judges allowed appellant to frustrate the orderly administration of justice under the umbrella of the right of self-representation.

The rules concerning the termination of the right of self-representation are not complex. They need not be repeated. (See e.g. *People v. Carson* (2005) 35 Cal.4th, 1, 8-11.) This case serves as a reminder to all trial courts that they have the discretionary power to terminate a defendant's pro per status (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562,] (*Faretta*)) where the defendant "deliberately engages in serious and obstructionist misconduct" (*Id.* at pp. 834-835, fn. 46 [45 L.Ed.2d at p. 581, fn. 46]) that threatens to subvert the core concept of a trial. (*People v. Carson* (2005) 35 Cal.4th 1, 10; see also *People v. Clark* (1992) 3 Cal.4th, 41, 114-115.) To be sure, self-representation cannot be terminated for forceful advocacy. It can be terminated for repetitious personal attacks on the integrity of the trial court and other personnel.

Had the trial court terminated self-representation and made an adequate record for doing so, we would have upheld it. It seems obvious that appellant was not interested in having a speedy resolution of his case and that he used the right of self-representation to actually prevent the orderly administration of justice. As *Faretta* itself recognized, "The right of self-representation is not a license to abuse the dignity of the courtroom." (*Faretta v. California* (1975) 422 U.S. 806, 834-835, fn. 46.) The record can only be read as an attempt to abuse the dignity of the courtroom and impugn the integrity of just about everyone involved in the case. This should not be tolerated.

Appellant's remaining arguments have been considered and merit no further discussion.[5]

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

---

[5] Appellant has filed an in propria persona habeas petition (B256226) alleging: judicial bias; vindictive prosecution; the improper admission of video surveillance evidence; that false evidence was introduced at trial; that his right of confrontation was violated; that the magistrate's search warrant violated the Fourth Amendment; that appellant was denied the right to conflict free counsel; denial of lawful identification procedures and denial of due process right to a fair and impartial tribunal. In a separate order, filed concurrently with this opinion, we deny the petition for writ of habeas corpus.

David Hirsch, Judge

Superior Court County of Ventura

_____

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Erika D. Jackson, Deputy Attorney General, for Plaintiff and Respondent.