Filed 6/30/15  P. v. Silva CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049584 |
| v. | (Super. Ct. No. 09CF2351) |
| GILBERTO CRUZ SILVA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

\*                 \*                 \*

One night, defendant Gilberto Cruz Silva picked up a prostitute, promising to pay her to have sex with him. After parking the vehicle, defendant produced a knife and forced her to engage in sexual intercourse. She freed herself by convincing defendant to let her get out of the vehicle to urinate. Defendant then picked up T.P., another prostitute, using the same ruse. But T.P. was also armed with a knife and when defendant tried to force her to have sex, a struggle ensued. Both of them were cut and T.P. additionally suffered face and head injuries. Defendant's injuries resulted in his hospitalization. In subsequent interviews, both before and after the police advised him of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (*Miranda*), defendant acknowledged the events that lead to his injuries.

A jury convicted him of forcible rape, assault with the intent to commit rape, and making criminal threats. It also returned true findings that defendant used a knife in committing the first crime and inflicted great bodily injury in committing the latter two offenses. He received a 24-year determinate prison sentence with a consecutive indeterminate term of 15 years to life. In his first appeal, we affirmed defendant's conviction, rejecting a claim the admission of his statements to the police violated his *Miranda* rights. However, we agreed the trial court had failed to conduct a hearing to resolve defendant's complaint that his court appointed attorney, a deputy public defender, failed to adequately represent him and remanded the matter for a hearing under *People v. Marsden* (1970) 2 Cal.3d 118.

On remand, the Office of the Public Defender declared a conflict of interest, thus rendering defendant's *Marsden* hearing moot. The Alternate Public Defender was appointed to represent defendant. It filed a motion for a new trial, asserting the Public Defender had a conflict of interest and failed to provide effective assistance of counsel at trial. After an evidentiary hearing, the trial court denied the motion and reinstated the previously imposed sentence.

Defendant again appeals, challenging the denial of his new trial motion and repeating his *Miranda* claim. Finding no error, we affirm.

DISCUSSION

In his motion for a new trial defendant itemized the grounds as follows: "i) trial counsel's performance fell below the standard of care in that he failed to present a coherent defense, including preparing the [d]efendant to testify, that he failed to impeach material witnesses, and that he failed to present DNA evidence that could have been argued for acquittal on the most serious offense, forcible rape . . .; and (ii) that trial counsel had a conflict of interest during the trial on the matter with the victim of Count 2, T[.]P., because his office represented her on a current prostitution case, . . . for which she was still on probation at the time of trial. As to both claims, the [d]efendant's right to effective representation was prejudicially affected, under the Federal and State Constitutions."

*1. The asserted conflict of interest.*

Defendant never asserted Stephen Daniels, the deputy public defender who represented him also represented T.P. The contention was based on the assertion the Office of the Public Defender represented her. Although defendant contends this representation was contemporaneous, the record is unclear. The prosecution asserted T.P. first appeared represented by a deputy public defender on May 12, 2010, and that this was the only time the public defender had appeared for her. In subsequent appearances, T.P. appeared in pro. per. or was represented by private counsel. Defendant's trial started on November 17, 2010. But whether the representation was contemporaneous or successive, Daniels was unaware his office was representing or had represented T.P. He testified during the hearing on the motion for new trial that he did a conflict check when

3

first appointed to represent defendant. He found no conflict and stated he had "no idea whether or not somebody from [his] office currently represented or previously represented one or both of the victims in this case." The trial court accepted this testimony as true; this "express factual finding is supported by the evidence and is binding on appeal." (*People v. Peyton* (2014) 229 Cal.App.4th 1063, 1080; *People v. Holly* (1976) 62 Cal.App.3d 797, 804.)

Defendant attributes what he contends is inadequate cross-examination of T.P. to the asserted conflict of interest. If Daniels was unaware of any conflict, this hardly could have motivated him to pull his punches during the cross-examination.

Furthermore, we apply the rule of *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674]; defendant must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Almanza* (2015) 233 Cal.App.4th 990, 1003.) This analysis is identical under either of the theories urged by defendant.

*2. The asserted inadequate representation.*

*2.1 Alleged failure to permit defendant to testify*

One of the contentions supporting the inadequate representation claim is that Daniels failed to permit defendant to testify. Here again, we are bound by the findings of the trial court. (*People v. Peyton, supra,* 229 Cal.App.4th at p.1080.) Daniels testified during the hearing on the motion for a new trial that he lacked specific recollection of talking to defendant about his testifying, but he described his practice: "I do essentially tell every single client I have that they have a right to testify, that it is entirely their right, it is . . . independent of me." And, "I absolutely would have told him."

Defendant acknowledged he had a "[b]ad memory" of his representation by Daniels because of the passage of time, but claimed he had wanted to testify and Daniels

4

told him not to. As to this contention, the trial judge stated at the hearing on the new trial motion, it had an "independent recollection" of getting defendant's waiver of his right to testify. "There's no doubt in this court's mind that the court did properly inquire of Mr. Silva and gave Mr. Silva every opportunity to express with this court – independent of what his attorney may have told him or not told him, to express to this court an understanding of the advantages and disadvantages of testifying. It was clear when I asked Mr. Silva that he had had a discussion with Mr. Daniels about the advantages and disadvantages. The court gave Mr. Silva the opportunity to ask the court any questions of the court if he was confused or didn't understand anything. [¶] When the day was done, it was abundantly clear that Mr. Silva made a knowing and voluntary and conscious decision not to testify in this matter." We reject defendant's contention that the reason he did not testify was the result of Daniels' inadequate representation.

### 2.2 Defense counsel's conduct of the trial

In the motion for a new trial, defendant contended Daniels failed to both impeach material witnesses and present DNA evidence. "In considering a claim of ineffective assistance of counsel, it is not necessary to determine '"whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."' [Citation.] It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable probability' that absent the errors the result would have been different. [Citations.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.)

Here there was no such "reasonable probability," particularly because defendant's statements to the police, which were admitted, fully corroborated the testimony of the victims. The following summarizes relevant portions of defendant's

5

statement, given after he received the appropriate warnings under *Miranda*: Defendant arrived home from a visit to a club in Riverside with his sister and others. His companions went to sleep but he wanted sex. Because he did not have any money, he decided to take a cooking knife so he could scare a "girl," the term he used throughout to describe his victims. He picked up a girl near a fast food restaurant. She got into his green Chevy Astro van and told him she wanted $60. He drove the van to a parking area near a mobile home park. After the two of them moved to the back seat, she asked for her money; he told her he did not have any and showed her the knife, which scared the girl. Defendant then described having sex with the girl. Defendant claimed he used a condom but did not ejaculate. The girl then escaped after telling him she had to go outside to urinate, leaving her purse in the van because she was afraid. He acknowledged believing the girl was scared he might stab her the whole time the two were having sex.

Defendant then related his treatment of the second victim, T.P. After the first girl ran away, defendant returned to the same street and found T.P. who offered to have sex with him for $60. She entered his van and defendant returned to the same parking area where he had engaged in sexual relations with the first girl. Again, when asked for the promised money, defendant told her he did not have money and showed her the knife. Then the girl also produced a knife and a struggle ensued. Both were cut in the fight.

In light of this detailed confession, we fail to find a reasonable probability the result of the trial would have been different had Daniels asked additional questions during his cross-examination of the victims which defendant now suggests or if he had presented DNA evidence.

3. *The Miranda issue.*

In the opinion issued for the prior appeal, we determined the trial court did not err in admitting defendant's pre-*Miranda* statements. This opinion is final and our

6

decision is law of the case. "[A]pplication of the law-of-the-case doctrine is appropriate where an issue presented and decided in the prior appeal, . . ., 'was proper as a guide to the court below on a new trial. [Citation.]'" (*People v. Boyer* (2006) 38 Cal.4th 412, 442.)

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

7