Filed 4/21/16  P. v. Bonhomme CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JERRY PROVIDENCE BONHOMME,<br><br>    Defendant and Appellant. | 2d Crim. No. B261119<br>(Super. Ct. No. 1418996)<br>(Santa Barbara County) |

Jerry Providence Bonhomme appeals from the judgment entered after a jury convicted him of rape of an intoxicated person (count 2 - Pen. Code, § 261, subd. (a)(3)); being under the influence of a controlled substance, a misdemeanor (count 5 - Health & Saf. Code, § 11550, subd. (a)); and rape of an unconscious or asleep person (count 6 - Pen. Code, § 261, subd. (a)(4)(A)).  For the two rape convictions, he was sentenced to prison for 16 years.  For the misdemeanor conviction, he was sentenced to an additional one year in county jail.

Appellant contends that the trial court erroneously instructed the jury and admitted evidence of uncharged sexual offenses.  We affirm.

*Facts*

*Count 2 - Rape of an Intoxicated Person (H.A.)*

After midnight on February 25, 2012, H.A. went to a nightclub.  She "was extremely drunk."  "[E]verything was getting . . . intensely blurry."  Appellant, a

complete stranger, sat next to her. They began conversing and then kissing. At appellant's suggestion, they left the nightclub, entered appellant's car, and drove to his house.

Appellant led H.A. into his bedroom. She felt "just really drunk" and vomited into a trash can. She then fell asleep on appellant's bed. She was wearing blue jeans and a tank top.

H.A. was awakened by "this sensation of a penis inside [her vagina]." Her blue jeans had been pulled down to expose her buttocks. She asked appellant what he was doing. He replied that "she had been grabbing him and that [she] was on top of him." H.A. said that she did not want to have sex with appellant.

At appellant's suggestion, H.A. removed her blue jeans and put on pajama pants. She "still felt really, really sick." She vomited some more into the trash can. She then lay down on the bed, closed her eyes, and pretended to be asleep. After a few minutes, appellant lay down behind her and put his fingers inside her vagina. Next, he grabbed her wrist, put her fingers around his erect penis, and "moved [her] wrist up and down." When he pulled down H.A.'s pajama pants, she started screaming and crying. She accused him of being a rapist. Appellant protested, "This is a misunderstanding." He drove H.A. to her parked car.

*Count 6 - Rape of an Unconscious or Asleep Person (B.B.)*

Appellant and B.B. were friends. They did not have a romantic relationship. One night in December 2011, B.B. and her boyfriend became intoxicated at a party after drinking alcohol. Appellant, who was at the party, drove them to his house. Appellant gave B.B. a drug. After ingesting it, she immediately fell asleep on appellant's bed. When she fell asleep, she "was definitely intoxicated." She was lying on her left side. When she awoke, appellant was on the bed directly behind her. Her pants had been pulled down below her hips, and appellant was "having sex with [her] as much as he could." He penetrated her vagina with his penis. B.B. pushed appellant away. Appellant drove B.B. and her boyfriend home.

2

*Appellant's Statements to the Police*

On March 30, 2012, Detective Brian Larson interviewed appellant about the incident involving H.A. Appellant said that she had been drunk and had thrown up several times inside his house. "She was sick." Appellant initially denied having sex with H.A. Detective Larson informed appellant that, because he was a convicted felon, his DNA was "on file." Larson said that his DNA had been found inside H.A.'s vagina. Appellant replied, "I did not rape that girl, dude." He said that H.A. had initiated sexual contact by grabbing his penis. They both took off their clothes and she got on top of him. They proceeded to have sexual intercourse. Appellant stopped when H.A. "weirded [him] out" by calling him "by someone else's name."

*Uncharged Sexual Offense: Rape of Wendy B.*

Wendy B. and appellant were friends. They had known each other for several years. They had engaged in consensual sex "a handful of times." They were not in a "relationship." They were "just friends having sex."

In March 2011 Wendy B. and appellant were at a party. Wendy B. had drunk about "three bottles [of wine] throughout the day" as well as tequila and vodka. At 2:00 or 2:30 a.m. she was "[p]retty intoxicated. Pretty much blacked out, drunk . . . ." She lay down on a bed and went to sleep. She was wearing a dress. When she awakened, she was lying on her side and appellant was behind her. Appellant's penis was inside her vagina. Wendy B. "was bummed." She "didn't scream or anything. [S]he let it happen." She had not agreed to have sex with appellant at that time.

*Uncharged Sexual Offense: Sexual Battery*
*Against Laura S. (Pen. Code, § 243.4, subd. (e)(1))*

At a house party one night in December 2010, Laura S. met appellant for the first time. She was "pretty intoxicated." She had consumed both alcohol and Ecstasy.

In the early hours of the morning, Laura S. and appellant lay down on a bed. They were fully clothed. They started kissing, but Laura S. "just wanted to go to sleep." She "pushed [appellant] away and told him [she] wanted to go to sleep."

Laura S. woke up at about 5:00 a.m. She got off the bed, left the bedroom, and returned about 30 minutes later. Still fully clothed, she lay down on the bed and went back to sleep.

When Laura S. awakened, she was lying on her back. Appellant was touching her breasts under her clothing and massaging her genitals over her clothing. Laura S. "started to freak out." She rolled away from appellant and pretended to still be asleep. About 30 seconds later, appellant recommenced touching her breasts and genital area. At this point, appellant's friends walked into the bedroom. Appellant's "hands went away," and Laura S. "pretended to wake up." She did not give appellant permission to touch her breasts or genital area. She "was sound asleep, and . . . woke up when it was already happening."

Appellant alleges that Laura S. "engaged in group sex with him, another man and another woman . . . ." The allegation is not supported by the evidence. Laura S. testified that she had "engage[d] in intimate sexual relations with Joey [E.] and Anezka [J.]." Joey E. testified that that he had "engage[d] in intimate sexual relations . . . with Anezka [J.] and Laura [S.]." Neither Laura S. nor Joey E. testified that appellant had participated in the "intimate sexual relations."

*Jury Instruction on Admission of Uncharged Sexual Offenses*

Appellant argues that, after the close of evidence, the trial court erroneously gave a slightly modified version of CALCRIM No. 1191 on the admission of evidence of uncharged sexual offenses pursuant to Evidence Code section 1108 (section 1108). Section 1108, subdivision (a) provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Provided that the trial court acts within its section 352 discretion, section 1108

4

"permits evidence that the defendant committed other sexual offenses to prove his propensity to commit the charged sexual offenses. [Citations.]" (*People v. Cottone* (2013) 57 Cal.4th 269, 281.)

The instruction in question provided in part: "You may only consider evidence of an uncharged offense as to a charged offense if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the uncharged offense. Proof by a preponderance of evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it's more likely than not that the fact is true." "[T]he People must still prove each element of every charge beyond a reasonable doubt."

The instruction correctly stated the law. In *People v. Cottone*, *supra*, 57 Cal.4th at pp. 287-288, the California Supreme Court concluded that, to be admissible under section 1108, an uncharged sexual offense must be proved by a preponderance of the evidence. Nevertheless, appellant claims that the trial court erred in giving the instruction "because of the risk that the jury was confused by which standard applied to which charges and may have found [him] guilty under the lower preponderance standard rather than beyond a reasonable doubt."

Appellant forfeited this claim because, as he acknowledges in his opening brief, "[b]oth the prosecution and the defense agreed to the instruction as set forth by the court." "A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete [or confusing] unless the party has requested appropriate clarifying or amplifying language. [Citation.]" (*People v. Lang* (1989) 49 Cal.3d 991, 1024, overruled on another ground in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.) Moreover, the language of the instruction was taken almost verbatim from CALCRIM No. 1191. "[D]efendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions." (*People v. Daya* (1994) 29 Cal.App.4th 697, 714.)

In any event, the trial court did not err in giving the instruction because it clearly informed the jury that, although uncharged offenses need be proved only by a

preponderance of the evidence, the charged offenses must be proved beyond a reasonable doubt. The court also gave CALCRIM No. 220 explaining the presumption of innocence and the requirement that the People prove the defendant guilty beyond a reasonable doubt. "[W]e presume that the jury 'meticulously followed the instructions given.' [Citation.]" (*People v. Cruz* (2001) 93 Cal.App.4th 69, 73.) In addition, we presume that the jury understood the instructions. (*People v. Peyton* (2014) 229 Cal.App.4th 1063, 1079.)

*Trial Court's Admission of Uncharged*

*Sexual Offenses Pursuant to Section 1108*

Appellant contends that the trial court erroneously admitted evidence of the uncharged sexual offenses. We review its ruling for abuse of discretion. (*People v. Ennis* (2010) 190 Cal.App.4th 721, 733.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Appellant acknowledges that he objected to the admission of evidence of the rape of Wendy B., but failed to object to the admission of evidence of the sexual battery committed against Laura S. By failing to object, appellant forfeited his claim that the trial court had erroneously admitted the latter evidence. (Evid. Code, § 353, subd. (a).) In any event, the trial court did not abuse its discretion in admitting evidence of both uncharged sexual offenses.

Appellant argues that the trial court should have excluded the evidence because "[t]here is a failure of proof in both cases of nonconsensual [sexual] activity, even when evaluated under the lower preponderance standard." But it was the jury's, not the trial court's, role to determine whether nonconsensual sexual activity had been proved by a preponderance of the evidence, and the jury was so instructed. Moreover, the evidence is sufficient to support a finding of nonconsensual sexual activity. In reviewing whether a finding has been proved by a preponderance of the evidence, we apply the substantial evidence test. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Wendy B. and Laura S. testified that they did not consent to appellant's sexual acts. Their

6

testimony constitutes substantial evidence. "[I]t is not a proper appellate function to reassess the credibility of the witnesses." (*People v. Jones* (1990) 51 Cal.3d 294, 314-315.) "'Testimony may be rejected only when it is inherently improbable or incredible, i.e., "'unbelievable per se,'" physically impossible or "'wholly unacceptable to reasonable minds.'"' [Citation.]" (*People v. Ennis*, *supra*, 190 Cal.App.4th at p. 729.)

Appellant asserts that the trial court abused its discretion because the probative value of the evidence of the uncharged sexual offenses was substantially outweighed by the probability that its admission would cause undue prejudice and confuse or mislead the jury. (Evid. Code, § 352.) We disagree. The evidence of appellant's nonconsensual sexual acts with Wendy B. and Laura S. was highly probative. It rebutted appellant's statements to the police that H.A. had consented to have sexual intercourse with him. "The testimony describing [appellant's] uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses. This circumstance decreased the potential for prejudice, because it was unlikely that the jury disbelieved [H.A.'s and B.B.'s] testimony regarding the charged offenses but nevertheless convicted [appellant] on the strength of [Wendy B.'s and Laura S.'s] testimony . . . regarding the uncharged offenses, or that the jury's passions were inflamed by the evidence of [appellant's] uncharged offenses." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) Furthermore, immediately before Wendy B. testified, the trial court instructed the jury pursuant to CALCRIM No. 1191 on the admission of evidence of uncharged sexual offenses. In view of this instruction, the trial court did not abuse its discretion in impliedly concluding that the admission of the evidence would not mislead or confuse the jury. "[I]t is presumed that the jury understood and followed the instruction. [Citation.]" (*People v. Peyton*, *supra*, 229 Cal.App.4th at p. 1079.)

*Abstract of Judgment*

The People suggest that the abstract of judgment be amended to correct a clerical error in the number of days of credit for time served. No such error was committed. Appellant was sentenced to one year in county jail for the misdemeanor offense of being under the influence of a controlled substance (count 5 - Health & Saf.

7

Code, § 11550, subd. (a)).  As to the misdemeanor sentence, the trial court awarded him 183 days of actual credit and 182 days of conduct credit.  The court stated that the remaining credits for the felony convictions are 816 days of actual credit and 816 days of conduct credit. This is precisely what the abstract of judgment shows.[1]

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

---

[1] The trial court simultaneously sentenced appellant in two cases - the instant case and case no. 1297447.  In the latter case, the trial court imposed a consecutive sentence of two years and awarded him 38 days of custody credits.  These credits are accurately reflected in the abstract of judgment.

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____

Diane E. Berley, under appointment by the Court of Appeals, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.