Filed 3/4/15  P. v. Allen CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B250321 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA405442) |
| v. | |
| TYLOR JEROME ALLEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Renee F. Korn, Judge.  Affirmed.

Melissa J. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Tylor Jerome Allen (defendant) appeals from his conviction of sale and possession for sale of cocaine base. He contends that prior crimes evidence amounted to inadmissible disposition or character evidence, and that the trial court erred in admitting the evidence pursuant to Evidence Code sections 352 and 1101, subdivision (b).[1] Defendant also requests that we review the sealed record of the in camera *Pitchess* hearing to determine whether the trial court properly exercised its discretion in ordering discovery.[2] We find no abuse of discretion in the admission of the prior crimes evidence or in the trial court's determination that some documents described in the sealed record were not discoverable. We thus affirm the judgment.

## BACKGROUND

Defendant was charged in count 1 with the sale or offer to sell cocaine base, in violation of Health and Safety Code section 11352, subdivision (a), and in count 2, with possession for sale of cocaine base, in violation of Health and Safety Code section 11351.5. As to both counts, the information alleged that defendant had suffered a prior serious or violent felony conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). In addition, the information alleged as to both counts pursuant to Health and Safety Code section 11370.2, subdivision (a), that defendant had suffered a prior drug conviction, a violation of Health and Safety Code section 11352. A jury found defendant guilty of both counts as charged, and in a bifurcated trial, the jury found true the prior conviction allegations.

On June 18, 2013, defendant was sentenced to a total prison term of nine years. For the base term (count 2) the court imposed the low term of three years, doubled as a second strike, and enhanced by three years pursuant to Health and Safety Code section

---

[1] All further statutory references are to the Evidence Code unless indicated otherwise.

[2] See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); section 1043; Penal Code sections 832.7 and 832.8.

11370.2. The court imposed a concurrent term of nine years in count 1, and struck the prior prison term allegation. The court ordered defendant to pay mandatory fines and fees and awarded a total of 1,004 days of presentence custody credit.

Defendant filed a timely notice of appeal.

**Prosecution evidence**

Los Angeles Police Officer Jesus Toris testified that he was conducting surveillance on February 3, 2012, of San Julian Street between 7th and 6th Streets, an area known for blatantly open sales and consumption of cocaine. At about 7:30 a.m., while watching from a second floor of a building on San Julian Street, Officer Toris observed defendant approach a man later identified as McElyeen. After defendant and McElyeen engaged in an inaudible conversation, McElyeen handed money to defendant, who quickly placed it in his pocket. Defendant then took a step back, looked from east to west, walked about three or four feet to a red shopping cart located behind him, retrieved an object from the front part of the cart, and placed the object onto McElyeen's open hand. McElyeen clenched his hand and walked away. Officer Toris and his partner left their surveillance post, found McElyeen, searched his person, and recovered 12 off-white solids resembling cocaine base.

About 10 minutes later the officers returned to where they had seen the transaction. Defendant was still there, along with the red shopping cart which was filled with recyclables covered with a blanket. Officer Toris observed plastic wrap sticking out from under the blanket, examined it, and found numerous off-white solids resembling cocaine base. Each solid was a usable amount, in sizes that would sell for three to ten dollars each. In defendant's pocket, the officers found crumpled currency totaling $173 in denominations consistent with narcotic transactions. Criminalist Marie Chance later examined samples of the off-white solids, and determined that they contained cocaine base.

Officer Toris summarized his expertise in recognizing narcotics and narcotics sales, and opined that defendant possessed cocaine base for the purpose of sale. He based his opinion on his observation of the transaction, the fact that no paraphernalia for

3

ingesting cocaine base was found on defendant or in the cart, and the absence of signs that defendant was a cocaine user. In addition, Officer Toris observed that defendant was clean and neat, not in possession of items a homeless person usually had, such as a toothbrush, toothpaste, soap, sleeping bag, or tent, and he gave an address for an apartment about six miles from the area.

Officer Jackeline Orellana testified regarding an incident which occurred on October 26, 2007, when she was working undercover near the same Skid Row area. At approximately 8:45 p.m., she approached defendant and asked whether he was "working," which was street vernacular or slang for selling narcotics. When defendant asked what she needed, she replied, "I need a 20." Defendant reached into a nearby shopping cart and retrieved a clear plastic bindle which contained off-white solids resembling cocaine base, and handed it to her. Officer Orellana paid defendant with two $10 bills which she had previously photocopied, took the bindle, walked away, and gave the predetermined signal to uniformed "chase" officers that she had concluded a narcotic transaction. The two $10 bills were recovered from defendant, and the contents of the bindle were later determined to contain cocaine base.

**Defense evidence**

Defendant testified that he sold narcotics on October 26, 2007, and that he pled guilty to the charges relating to that incident, but he explained that he was a homeless addict at that time, and the shopping cart contained his belongings, not his narcotics. Defendant claimed that the address on his identification in 2007 was his mother's address. He also claimed that in 2007, he sold the crack cocaine he possessed for personal use in order to earn money to buy more narcotics for himself, and that he kept the narcotics behind the cart, not in the cart.

Defendant admitted that he had pled guilty to robbery in 2004, although he thought of it as grand theft person, not robbery. He explained that while riding public transportation he snatched a cell phone from another passenger's hand and ran. Defendant was soon apprehended, and the cell phone was returned to the victim.

4

Defendant denied he had been in possession of rock cocaine or cocaine base in February 2012, when he was arrested by Officer Toris on the current charges, and denied that he sold cocaine to McElyeen. He suggested that the police might have planted the cocaine in the cart. Defendant claimed he was in the area selling cigarettes, which he routinely purchased from a wholesale dealer and resold at a profit, and that McElyeen bought two cigarettes for one dollar, thereby explaining the money he pocketed. Defendant testified that when he was detained, he still had cigarettes in his jacket pocket, consisting of two unopened packs and one opened pack, but Officer Toris threw them away after telling him that he could not take them into the police station. Defendant denied that his money was crumpled, except for a one dollar bill and a five dollar bill, and claimed that the rest was folded. Defendant also denied that the shopping cart was his. He claimed that when McElyeen was present there was a man next to him who he saw get something out of the cart. There were six or seven other shopping carts nearby belonging to people who slept outside in the area. Defendant explained that they were near the mission, which was about to serve breakfast.

Defendant claimed that the address on his 2012 identification was his grandmother's, that he used it only as a mailing address, and that he had been living with a girlfriend but was out of the house due to an argument, sleeping in the nearby Veterans of America drop-in center.

## DISCUSSION

### I. Evidence of uncharged prior crimes

Defendant contends that the trial court erred in admitting evidence of his sale of cocaine base in 2007 to undercover Officer Orellana. He argues that the 2007 crime was too dissimilar to the current offense to be relevant to the issues of intent and knowledge, and that the prejudicial effect of the evidence outweighed its probative value. Defendant also contends that the error resulted in a denial of his constitutional rights to due process and a fair trial.

The trial court found the prior crimes evidence admissible under sections 352 and 1101, subdivision (b), and relevant to show defendant's intent to sell a controlled

5

substance, his knowledge of the nature of the substance and its presence in the shopping cart, and that he had a plan or scheme to commit the charged offenses.

Evidence that a person committed a crime is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

## A. *Similarity of prior and current crimes*

"Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 369, citing *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403 (*Ewoldt*.) The prior and current crimes need not be identical. (See *People v. Harris* (2013) 57 Cal.4th 804, 842.) The greatest degree of similarity is required when the purpose of the evidence is to prove identity, whereas a lesser degree of similarity is required when the issue is common design or plan, and the least degree of similarity is required when the issue is intent. (*People v. Kipp*, *supra*, at pp. 370-371.) "On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion. [Citations.]" (*Id*. at p. 369.) "A court abuses its discretion when its ruling 'falls outside the bounds of reason.' [Citation.]" (*Id*. at p. 371.)

Defendant contends that the 2007 crime was too dissimilar to the current crime to support a rational inference of knowledge of the presence of cocaine base or intent to sell it. Defendant points out several dissimilar circumstances, such as: the time of day, evening in 2007 and morning in 2012; defendant's admission to possession for sale in 2007, versus his denial of any drug possession in 2012; and the indisputable purchase by an undercover officer in 2007 with prerecorded currency, versus the lack of conclusive

6

evidence that McElyeen purchased his cocaine base from defendant. Defendant admits to just three points of similarity: the use of a shopping cart, the location on Skid Row, and the same drug.

A few dissimilarities do not render a prior similar crime irrelevant to the issue of intent; indeed, a single "crucial point of similarity" may be sufficient to establish the relevance of the prior crime. (*People v. Jones* (2011) 51 Cal.4th 346, 371.) All three points of similarity cited by defendant were crucial here, as they demonstrated a particular modus operandi: the use of a shopping cart to hide the drugs; the nature of the drug, cocaine base; and the occurrence of both incidents on Skid Row, in an area of open drugs sales and use. When the modus operandi of the uncharged offense is markedly similar to the charged offense, the evidence is sufficient to raise a rational inference not only of intent, but also of a common design or plan. (See *Ewoldt*, *supra*, 7 Cal.4th at pp. 399, 402.)

The evidence was also relevant to the issue of defendant's knowledge of the nature of the controlled substance and its presence in the shopping cart. "To obtain a conviction for possession of a controlled substance for sale, the prosecution must prove that the defendant had knowledge of both the presence of the contraband and its illegal character. [Citation.] Prior incidents of possession of an illegal drug are relevant to prove the knowledge element. [Citation.]" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 754, citing *People v. Pijal* (1973) 33 Cal.App.3d 682, 691.)

The trial court thus did not abuse its discretion in determining that the current and prior crimes were sufficiently similar to support a rational inference of intent, common design or plan, and knowledge, and thus admissible under section 1101, subdivision (b).

### B. Prejudice and probative value

A determination that evidence of an uncharged crime is admissible under section 1101 does not end the inquiry: "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.]" (*Ewoldt*, *supra*, 7

7

Cal.4th at p. 404.) Undue prejudice may result from an "increased danger that the jury [would be] inclined to punish defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses." (*Id*. at p. 405.) We review the ruling under the deferential abuse of discretion standard and reverse only if it was arbitrary, whimsical, or capricious as a matter of law. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 991.)

Defendant argues that prejudice was demonstrated by the undue amount of time consumed in presenting the evidence of the 2007 crimes. He also contends that prejudice was demonstrated by the prosecutor's argument in summation and her disproportionate emphasis on the prior crimes. Finally, defendant contends that because the evidence of the current offense presented at trial demonstrated "beyond dispute" that the drugs were possessed with the intent to sell, the 2007 evidence was cumulative on the issue of intent.

In essence, defendant argues that in light of the proceedings which occurred after the court's ruling, the evidence should not have been admitted. However, we review the trial court's discretionary ruling "'at the time it was made, . . . and not by reference to evidence produced at a later date.' [Citation.]" (*People v. Robertson*, *supra*, 208 Cal.App.4th at p. 991, quoting *People v. Welch* (1999) 20 Cal.4th 701, 739.)[3]

Defendant appears to conflate the *danger* of undue prejudice which must be weighed by the trial court under section 352, with the appellate court's review for prejudice caused by trial court error, under the test of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), which asks whether it is reasonably probable defendant would have achieved a more favorable result absent the error. As defendant must first show that the

---

[3] Moreover, we do not agree that the evidence consumed an undue amount of time. The court stated on the record that the examination of the first two witnesses took about 15 minutes. The testimony of the third witness covered less than five pages of the reporter's transcript. Defendant argues that it is not clear that the court was referring to the evidence of the 2007 crime as taking 15 minutes. We disagree. The court's meaning was reasonably clear. Further, defendant's contention regarding the prosecutor's remarks begs the question whether the 2007 evidence was properly admitted prior to summation. If so, the prosecutor was entitled to vigorously argue all inferences warranted by the evidence. (See *People v. Hill* (1998) 17 Cal.4th 800, 819.)

trial court erred at the time of its ruling, it is premature to argue that any error was prejudicial. Nevertheless, there is some overlap of the analysis of the two issues. Even if defendant established that the court's section 352 analysis was flawed, defendant would not meet his burden to show reversible error under the *Watson* test unless he also demonstrated that the other crimes evidence was in fact "'so extraordinarily prejudicial, and of so little relevance to guilt, that it threaten[ed] to sway the jury to convict regardless of defendant's actual guilt.' [Citation.]" (*People v. Peyton* (2014) 229 Cal.App.4th 1063, 1079.)

Defendant has failed to satisfy his initial burden to demonstrate that the other crimes evidence was unduly prejudicial. As respondent observes, the prior and current crimes were both violations of Health and Safety Code sections 11352 and 11351.5, committed under similar circumstances; thus the 2007 incident was no more inflammatory than the current incident. Such a circumstance decreases the potential for prejudice. (See *Ewoldt*, *supra*, 7 Cal.4th at p. 405.) The potential for prejudice was further diminished by the prosecutor's offer to prove that defendant had already been convicted of the 2007 offenses, eliminating the danger that the jury would be inclined to punish defendant for the uncharged crimes or the danger of confusing the issues.[4] (See *People v. Balcom* (1994) 7 Cal.4th 414, 427 [potential for prejudice reduced by defendant's conviction on uncharged offenses]; cf. *Ewoldt*, *supra*, at p. 405 [increased the danger of jury punishment when uncharged acts did not result in criminal convictions].)

Finally, before the prosecutor presented Officer Orellana's testimony, the court instructed the jury extensively regarding the limited purpose of the evidence, admonished the jury not to conclude from the evidence that defendant had a bad character or was disposed to commit crime, and reminded the jury that the prosecution was still obligated to prove each of the current charges beyond a reasonable doubt. Such instructions were sufficient to attenuate any remaining potential prejudice. (See *People v. Ghebretensae,*

---

[4] At trial, defendant admitted his guilty plea and conviction of the 2007 crimes.

9

*supra*, 222 Cal.App.4th at p. 755.) We presume that the jury understood and followed the court's instructions. (See *People v. Peyton, supra*, 229 Cal.App.4th at p. 1079.)

We reject defendant's contention that the 2007 incident had no probative value. Defendant relies on *People v. Lopez* (2011) 198 Cal.App.4th 698, 715-716, in which evidence of an uncharged crime had been admitted to prove the defendant's intent, which was error because the only disputed issue in the case was the identity of the perpetrator. Although the facts are very different from those presented here, defendant reasons that because the evidence in this case established beyond dispute that the drugs were possessed with intent to sell, any evidence of intent provided by the 2007 incident was cumulative and irrelevant.

While the evidence that defendant possessed cocaine base with the intent to sell it was strong, we cannot say that possession and intent were not contested issues, since defendant testified that he had no drugs, the shopping cart was not his, and he was selling only cigarettes. Defendant thus placed not only intent and possession at issue, but also knowledge of the location and nature of the drugs. As the 2007 incident provided evidence of a similar modus operandi, it was certainly probative of those issues. (See *Ewoldt*, *supra*, 7 Cal.4th at pp. 399, 402; *People v. Ghebretensae supra*, 222 Cal.App.4th at p. 754.) We conclude that the probative value of the evidence of the 2007 incident outweighed any potential prejudice, and we find no abuse of discretion in its admission.

Regardless, if the ruling had been error, we would also conclude that it was harmless. Despite defendant's contention that possession with intent to sell was established beyond dispute, defendant argues that due to weaknesses in the prosecution's evidence, it was reasonably probable that the jury would have acquitted him if the evidence of the 2007 incident had been excluded. In essence, defendant argues that Officer Toris could have been mistaken in what he saw from his vantage point, defendant and McElyeen were out of his sight for a time, and McElyeen gave no statement or testimony. We construe defendant's reasoning as an argument that because much of the evidence was circumstantial, the jury would probably have rejected it. That is unlikely however, considering that the circumstantial evidence of the current offenses was

10

overwhelming. McElyeen handed money to defendant, who quickly placed it in his pocket, and then looked around before he retrieved something from the shopping cart and placed it into McElyeen's hand. Within 10 minutes, Officer Toris recovered cocaine base from McElyeen and from the shopping cart, and found in defendant's pocket, crumpled currency in denominations consistent with narcotic transactions. Further, the trial court read CALCRIM Nos. 223, 224, and 225, defining direct and circumstantial evidence, explaining the proper use of circumstantial evidence, and instructing that neither type of evidence was more reliable than the other. We presume that the jurors understood and followed those instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

In sum, as defendant failed to demonstrate that the prior crimes evidence had little relevance to guilt or that it was extraordinarily prejudicial, he has not met his burden to demonstrate either an abuse of discretion under section 352 or reversible error under the standard of *Watson*, *supra*, 46 Cal.2d at page 836. (See *People v. Peyton, supra*, 229 Cal.App.4th at p. 1079.)

## II. *Pitchess* motion

Defendant seeks review of the sealed transcript of the trial court's in camera review of Officer Toris's personnel files and other confidential records. The trial court granted defendant's *Pitchess* motion, but limited any discovery to relevant evidence relating to any false reports. The court found several documents relevant to this issue and ordered the custodian to turn them over to the defense. Defendant requests a review of the trial court's determination that there were no other discoverable items in the records produced.

We review the trial court's determination for an abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) The records produced in the trial court were not retained, but the sealed transcript of the in camera hearing demonstrates that the trial judge examined and described each one. We thus find the transcript sufficiently detailed to review the trial court's discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229.) Upon review of the sealed record of the in camera proceedings, we conclude the trial court properly exercised its discretion in determining that the

11

documents produced complied with the scope of the *Pitchess* motion, and in determining that the documents which were not ordered disclosed to the defense did not fall within the scope of the motion as granted.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT