Filed 4/24/25  In re R.B. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re R.B., a Person Coming Under the Juvenile Court Law. | C101449 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>R.B.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 52009492) |

Appointed counsel for minor R.B. asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  Minor has also filed a supplemental brief raising numerous issues.  We find that minor's issues are forfeited or meritless, and our independent review of the record finds no arguable error that would result in a disposition more favorable to minor.  We affirm.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

In March 2023, a juvenile wardship petition was filed pursuant to Welfare and Institutions Code[1] section 602, alleging that minor committed several criminal offenses, including a lewd act upon a child under the age of 14 years (Pen. Code, § 288, subd. (a); count one), possession or control of child pornography (*id.*, § 311.11, subd. (a); count two), petty theft (*id.*, § 488; count three), and possession of an alcoholic beverage by a minor (Bus. & Prof. Code, § 25662, subd. (a); count four).  The allegations were based on an incident in which minor, who was then 12 years old, and two of his same-aged friends spent the night at minor's house.  After the children stole alcohol from a store and got intoxicated, minor allegedly told the victim to orally copulate him, which the victim did while minor filmed the sexual encounter.  The victim did not remember the incident until minor showed him a portion of the video at school the following week; the victim told his mother, and she reported it to the school.

The matter was set for an initial hearing on April 3, 2023.  Minor was ordered to appear at the hearing and was notified that he had the following rights:  to be at the hearing and to present evidence, to be represented by an attorney, to have an attorney appointed for him if he could not afford one, and to have the court appoint him an attorney to speak with him before the scheduled court date.  Minor's father was also notified of the hearing date and informed that he had the right to be present and have an attorney represent him at the hearing.

At the April 2023 hearing, the juvenile court arraigned minor on the petition, advising him of his constitutional rights to an attorney or to appointed counsel, to have trial within 15 court days, to confront and cross-examine witnesses, to use the court's subpoena power to compel witness testimony, to testify, to have the prosecution prove the petition allegations beyond a reasonable doubt, and the right against self-incrimination.

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

At minor's request, the court appointed the public defender's office to represent him. Counsel acknowledged receipt of the petition and entered denials and a time waiver. Father was present at the hearing, provided his and his wife's contact information, and informed the court that because his wife had suffered complications from a stroke, contacting her would be "emotionally . . . traumatiz[ing]" for her. The court ordered minor not to have any contact or discussions with the victim. The matter was continued.

At the continued hearing in April 2023, the parties requested a continuance to conduct further investigation, and the prosecution also requested a temporary restraining order against minor. The victim's mother had apparently requested that minor not be allowed to attend school because he and the victim had recently gotten into a altercation. Minor's counsel objected to the restraining order, arguing the victim and his brother were the aggressors during the school altercation. According to minor and father, minor reported the incident to school authorities or the resource officer after the altercation, and they intended to file for a reciprocal restraining order later that afternoon. After considering the issue, the court ordered minor to stay 25 yards away from the victim while at school unless directly supervised by an adult and 100 yards away from the victim while off school grounds. The matter was continued.

At the continued hearing on May 25, 2023, the public defender declared a conflict and the juvenile court, with minor's consent, appointed conflict counsel Matthew Lanthier to represent him; Lanthier had met with minor and father before the hearing. The court extended the temporary restraining order and continued the matter to June 29, 2023. Minor remained undetained and in parental custody.

The juvenile court conducted a hearing on June 12, 2023, at attorney Lanthier's request, so father could address differences that had arisen between him and Lanthier regarding father's access to evidence and attorney-client privileged communications.

3

Lanthier also requested that the court ask whether minor wanted to make a *Marsden*[2] motion to relieve him as counsel.

During the hearing, father expressed frustration that Lanthier declined to discuss the facts of the case with minor while father was present; father claimed that minor was not capable of making decisions regarding the case without his input. Lanthier explained that, to preserve attorney-client confidentiality, his office preferred not to discuss the facts or the evidence with minor while father was present. Counsel had also said that minor was free to discuss video evidence with father, although father could not review such evidence himself. After addressing the concept of attorney-client privilege, the court noted that father could retain a different attorney to represent minor, if he chose.[3] Upon further discussions with minor, Lanthier informed the court that minor was not requesting a *Marsden* hearing to relieve him at that time.

On August 18, 2023, the juvenile court granted Lanthier's ex parte request for an order appointing an expert in adolescent psychology and sexuality.

At a pretrial conference before a visiting judge in August 2023, Lanthier informed the juvenile court that, while there had been previous discussions about obtaining private counsel for minor, private counsel had not been retained. Instead, father and minor had filed two pro. per. motions: (1) a "motion to resolve legal ethical matters," (capitalization omitted) and (2) a "motion to take [a] picture" of the juvenile courtroom. (capitalization omitted). The former motion expressed their displeasure with Lanthier's alleged deficient representation of minor. They claimed Lanthier had "sidelin[ed]" father by refusing to discuss various legal principles and authorities with father and by making tactical decisions regarding the case that father believed he should be able to make as

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

[3] The juvenile court initially suggested that it could appoint separate counsel for father, but after conducting additional research on the issue, the court informed father that while it could not appoint him counsel, father was free to hire his own representation.

minor's parent. Father requested that the motions be decided by the regularly assigned judge.

At the same hearing, Lanthier expressed his intention to declare a doubt as to minor's competency (§ 709) and after speaking with minor, Lanthier said minor wanted to request a *Marsden* hearing to relieve him as counsel. Father interjected that they would like the *Marsden* motion heard by the assigned judge, so, over Lanthier's objection, the visiting judge continued the matter for one day so the assigned judge could consider the *Marsden* motion, the section 709 competency declaration, and father's motions. Father argued with the court about the order he wanted the issues addressed, claiming his motions should be decided first, but the court explained that defense counsel was in charge of presenting minor's case. The matter was continued.

On August 28, 2023, the juvenile court held a *Marsden* hearing in which Lanthier, minor, and father (with minor's consent) were present. The court considered the extensive work conducted thus far by Lanthier as well as complaints by minor and father regarding his representation. Although the court declined to find Lanthier's representation had been inadequate, it found there had been an irreparable breakdown in the attorney-client relationship and the court relieved Lanthier as minor's counsel. Father requested that the court appoint attorney Kevin Adamson to represent minor because Adamson had indicated to father that he welcomed more parental involvement; the court granted father's request. The court then denied, without prejudice, father's motions to resolve legal ethical issues and to take a picture of the courtroom. The matter was set for a further pretrial hearing in September 2023.

At the hearing on September 18, 2023, Adamson withdrew Lanthier's request for a competency evaluation under section 709, informing the juvenile court that, after meeting extensively with minor and father, he believed minor was able to adequately assist in his own defense. Adamson waived time to October 23, 2023, to allow for additional

5

investigation and further discussions with the prosecution about the case. The court extended the temporary restraining order to that date.

At the October 23 hearing, the parties requested a two-month continuance to December 11 to obtain a pre-plea report because they hoped the case might settle. Minor was considering the prosecution's offer to resolve the case by admitting misdemeanor violations for petty theft (Pen. Code, § 488) and disorderly conduct (Pen. Code, § 647, subd. (j)). The court granted the continuance and extended the temporary restraining order to the continued court date.

On December 5, 2023, father filed a motion to dismiss the petition for failure to serve minor and both parents a copy of the petition under section 658. That same day, father, on minor's behalf, filed a motion to obtain prehearing discovery under rule 5.546 of the California Rules of Court.[4]

At the hearing on December 11, 2023, Adamson informed the juvenile court that the parties had been unable to resolve the case, and he withdrew the request for a pre-plea report; minor's parents had apparently expressed apprehension about settling if minor was required to admit certain disputed facts. Regarding the motions filed by father on minor's behalf, the court noted that minor's counsel had not filed the motions, so it declined to address them during the hearing. The matter was continued, and the temporary restraining order was extended to February 5, 2024.

In January 2024, the juvenile court appointed a clinical psychologist to conduct a confidential psychological evaluation of minor pursuant to Evidence Code section 1017.

On January 17, 2024, father filed a motion to dismiss based on alleged violations of judicial ethics and civil rights violations, claiming he had a right to appointed counsel that had not been provided and that he had a right to rulings on motions he filed pro se on minor's behalf. The motion to dismiss asserted, among other things, that minor could not

---

[4] Further undesignated rule references are to the California Rules of Court.

6

receive a fair trial and that the judge was biased against minor because minor had asked father why the judge "hate[d] [minor]?" and may have mistakenly identified minor's current age during one hearing, that attorney Lanthier had withheld information from father, that the consequences of pleading to a lesser charge were not disclosed, that father disagreed with a police report's description of the officer's interaction with father and minor at school, that the officer violated *Miranda*[5] and psychologically manipulated minor, and that the alleged victim also should have been charged with sexual offenses.

That same day, father filed several other pro. per. motions on minor's behalf raising the same issues referenced above, including (1) a motion to dismiss for "invidious selective prosecution," (capitalization omitted) again arguing the victim should have also been charged, (2) a motion to dismiss based on illegal actions by law enforcement, asserting an officer violated minor's constitutional rights during an alleged custodial interrogation at school, and (3) a motion to dismiss based on deprivation of civil and statutory rights and perjury by the officer, again disputing various statements in the police report. Father also filed a request for judicial notice of his right to represent himself, citing various statutes and legal principles related to criminal proceedings.

On February 5, 2024, the juvenile court continued the matter to the following month to allow additional time for the psychologist to evaluate minor under Evidence Code section 1017. The court extended the restraining order.

At the continued hearing on March 4, 2024, minor's counsel informed the juvenile court that the parties had reached an agreement to resolve the case. Minor agreed to plead no contest to count three, misdemeanor petty theft (Pen. Code, § 488), and an added count five, misdemeanor disorderly conduct/distribution of sexual image causing distress (Pen. Code, § 647, subd. (j)(4)(A)), in exchange for dismissal of the remaining

---

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

counts pursuant to *In re Jimmy P.*[6] Before taking minor's plea, the juvenile court advised him of his maximum exposure, constitutional rights, and the consequences of pleading no contest; minor responded that he understood his rights and wanted to give them up by pleading no contest. The court asked minor's counsel whether counsel had any issues with minor's capacity to know the difference between right and wrong and understand the wrongfulness of his actions, and counsel indicated he did not and would stipulate to capacity for purposes of Penal Code section 26. Counsel also stipulated to a factual basis for the pleas.

The juvenile court accepted minor's plea, which it found to be freely and voluntarily given, found the petition allegations true, and determined minor was a person described by section 602. The court further found that minor understood the nature of the conduct alleged in the petition, the possible consequences of an admission or plea, and that even though he was under the age of 14 when he committed the offenses, he knew the wrongfulness of his conduct at that time. The court set disposition for April 22, 2024, and extended the restraining order. Minor's counsel noted that the prosecution did not object to a potential disposition of nonwardship with six months of probation under section 725, subdivision (a). The court subsequently recalled the matter to inform the parties that the judge would not be present on the scheduled disposition date, and asked for an *Arbuckle*[7] waiver; minor's counsel agreed.

At the scheduled disposition hearing on April 22, 2024, a different judge reconfirmed minor's *Arbuckle* waiver, and both minor and counsel agreed to have the judge enter disposition. The juvenile court stated it had considered the probation report, which minor and his counsel had received and reviewed. Minor's counsel requested

---

[6] Under *In re Jimmy P.*, the juvenile court could consider the facts of the dismissed counts for purposes of disposition. (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679.)

[7] *People v. Arbuckle* (1978) 22 Cal.3d 749.

several changes to errors in the probation report based on his discussions with father, and the court made all of the requested changes. The court placed minor on nonwardship probation in his parents' home for six months under section 725, subdivision (a), with various terms and conditions.

Father appealed, and this court construed the notice of appeal to be filed by minor. The court dismissed the appeal as to father only, for lack of standing.[8]

## DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asked this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d at p. 436.) Minor was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.

Minor filed a supplemental brief raising numerous issues. After reviewing the record and considering his arguments, we find minor's assertions to be forfeited or meritless.

Minor first argues that he received ineffective assistance of counsel. To establish ineffective assistance, minor must demonstrate: (1) that counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) that he suffered prejudice, meaning that but for counsel's unprofessional errors, it is reasonably probable that the result would have been different. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) "Ineffective assistance is particularly difficult to demonstrate on direct appeal, where we are limited to the record from the trial court." (*People v. Acosta* (2018) 28 Cal.App.5th 701, 706.) Unless minor establishes to

---

[8] See *In re Almalik S.* (1998) 68 Cal.App.4th 851, 854 [section 800 affords a parent no right to appeal in a juvenile delinquency matter]; section 800, subdivision (a)(1) ["A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as from an order after judgment"].

the contrary, we presume counsel's performance fell within the wide range of professional competence and that counsel's actions or inactions can be explained as a matter of sound trial strategy. (*Ibid.*) If the record sheds no light on why counsel acted or failed to act in the manner challenged, we must reject an ineffective assistance claim unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. (*Ibid.*) Minor has failed to meet this burden.

Minor does not identify which of his three appointed attorneys provided allegedly deficient representation. In any event, minor cites to nothing in the record on appeal to support his contention that one of his three attorneys told him that "[t]hey have already decided you're guilty," or that they preferred to "plead[] out cases—rather than committing the time and effort required to mount a proper defense" because it was more profitable for the unidentified attorney to do so. (*People v. Lopez*, *supra*, 42 Cal.4th at p. 966 [recognizing that claims of ineffective assistance of counsel are more appropriately raised on habeas corpus rather than on direct appeal where the reviewing court is limited to the record on appeal].)

To the extent minor asserts counsel discussed the possible length of any probationary term, it appears counsel appropriately advised minor of the potential consequences of accepting or rejecting a plea deal. Minor also implies that counsel was ineffective because, after receiving the probation report, which he and father believed contained inaccuracies, minor instructed counsel to "remove the plea deal" but his counsel refused to do so against his wishes. Minor, however, never raised this objection below. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 [" ' "[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].) Instead,

10

minor's counsel requested that the juvenile court amend the report to correct the perceived errors, and the court did so. Minor's ineffective assistance claim is without merit.

Minor next contends he could not receive a fair hearing because the outcome had been predetermined by the judge. He alleges that the juvenile court's primary motivation throughout the proceedings was to increase the county's financial gain through the "Youth Offender Block Grant."[9] However, he cites to nothing in the record showing he objected on this basis below (*In re Sheena K.*, *supra*, 40 Cal.4th at pp. 880-881 [issue not raised below may be forfeited on appeal]; *In re S.B.*, *supra*, 32 Cal.4th at p. 1293 [same]), nor to any evidence supporting this speculative claim (see *People v. Catlin* (2001) 26 Cal.4th 81, 113 [rejecting the appellant's speculative claim as unpersuasive]).

Contrary to minor's assertions, our review of the record reveals the juvenile court treated minor respectfully and fairly at each hearing. The juvenile court repeatedly advised minor of his right to counsel, the rights of confrontation and examination, the privilege against self-incrimination, and the applicable beyond-a-reasonable-doubt standard of proof, which are essential due process safeguards that ensure fair hearings in delinquency proceedings. (See, e.g., *In re Gault* (1967) 387 U.S. 1, 30-31, 33, 41, 55-56 [recognizing certain due process rights apply in juvenile delinquency matters]; *In re Winship* (1970) 397 U.S. 358, 368 [reasonable doubt standard is constitutionally required in juvenile delinquency adjudications]; *McKeiver v. Pennsylvania* (1971) 403 U.S. 528, 545 [a jury trial is not constitutionally required in a juvenile delinquency proceeding].) The juvenile court, moreover, granted minor's *Marsden* motion to relieve his second appointed attorney when they came to an impasse and appointed the attorney father

---

[9] The Legislature first established the Youthful Offender Block Grant Program in 2007 to enhance the capacity of county departments to provide appropriate rehabilitative and supervision services to youthful offenders. (See § 1951, subds. (a), (b); Stats. 2007, ch. 175, § 30.)

expressly requested. Under the circumstances, we find that the court acted fairly and impartially throughout the proceedings.

Minor next argues the juvenile court improperly impeded father's representation of him below. But minor had appointed counsel (*In re Kevin S.* (2003) 113 Cal.App.4th 97, 107 ["[a] juvenile alleged to be a delinquent has a statutory right to an attorney, including, if necessary, appointed counsel at all stages of the proceedings in the juvenile court"]), and father, who was not an attorney, was not authorized to represent minor during the delinquency proceedings (see Bus. & Prof. Code, § 6125 ["No person shall practice law in California unless the person is an active licensee of the State Bar"]; *In re Gordon J.* (1980) 108 Cal.App.3d 907, 914 [juvenile was not entitled to have his father assist him in his defense or represent him where his father was not a member of the bar]).

While *Faretta v. California* (1975) 422 U.S. 806, 819 held that a defendant has a right under the Sixth Amendment to represent himself, minor never filed a *Faretta* motion, and nothing in *Faretta* empowered father, a non-lawyer, to represent minor. And contrary to minor's argument, neither section 262, which allows a minor or his parent for good cause to file a motion to have the juvenile court set aside or modify any order of a juvenile hearing officer, nor section 263, which allows a minor or his parent to move to transfer the case to the county of the child's residence, permit a parent to represent his or her child in a juvenile proceeding when that parent is not a member of the bar. The same is true for rule 5.785(b), which provides an opportunity for a parent to present relevant evidence regarding an appropriate disposition at the disposition hearing, but not a right for that parent to represent the child. (Rule 5.785(b) [at a disposition hearing, the juvenile court must consider the probation social study, and any relevant evidence offered by the petitioner, the child, or the parent].)

The fact that the juvenile court did not rule on various motions father filed on minor's behalf while minor was represented by appointed counsel in no way "stripped" or otherwise "divested" father of his parental rights or violated the Fourteenth Amendment.

12

To the extent minor argues father was entitled to a hearing on father's fitness as a parent before minor was taken away from him, we note minor was *never* detained or removed from father's custody. Indeed, at disposition, the juvenile court placed minor on nonwardship probation in father's home.

The juvenile court, moreover, did not "force" minor to rely on appointed counsel as he now argues. At the initial hearing, the juvenile court asked minor whether he wanted counsel to be appointed for him, and minor responded, "[y]es." After minor requested a *Marsden* hearing to relieve his second appointed counsel, the juvenile court found a breakdown of the attorney-client relationship, relieved counsel as minor requested, and appointed a third attorney to represent minor whom father specifically requested. Father, with minor's consent, was allowed to participate in the confidential *Marsden* hearing. The court, then, did not disregard father's input as minor asserts or otherwise force unwanted appointed counsel on minor.

Minor next asserts his father "forced" him into accepting the plea deal because his father had "rightfully determined" that he would be denied a fair trial. The plea colloquy belies his argument. During the change of plea hearing, the juvenile court explained the proposed resolution to minor, advised him of his constitutional rights and the consequences of pleading, inquired whether minor had had enough time to discuss the case with his counsel, including any potential defenses to the charges, and asked whether he wanted to plead no contest to the two misdemeanor charges in exchange for dismissal of the more serious offenses alleged in the petition. Neither minor nor father (who was also present at the hearing) objected that minor had been forced into taking the plea deal. By failing to object below, minor has forfeited this argument on appeal. (*In re Sheena K.*, *supra*, 40 Cal.4th at pp. 880-881 [issue not raised below may be forfeited on appeal].)

Minor asserts the probation report was defective in several respects. Such purported defects include misidentifying his age at the time of the offense, providing no "Mens Rea," and containing hearsay statements. Despite minor's contentions,

13

presentence probation reports often contain hearsay statements from victims or witnesses, and such reports contemplate that police reports will be used to prepare crime summaries contained in the reports. (*People v. Otto* (2001) 26 Cal.4th 200, 212; see also Pen. Code, § 1203; rules 4.411, 4.411.5 & 4.437(e).) Courts, moreover, routinely consider and rely upon hearsay statements in such presentence reports to determine whether to place a defendant on probation and to evaluate his or her level of culpability when selecting an appropriate sentence. (*Otto*, at p. 212.) We further note that, here, minor's counsel, minor, and father had an opportunity prior to disposition to review and challenge alleged inaccuracies in the probation report. At the disposition hearing, minor's counsel highlighted the errors minor and father wanted corrected, and the juvenile court made all of the requested changes to the report. Minor's contentions are meritless.

Minor next questions how a 12 year old could be charged with committing a sexual offense, especially with another same-aged child. He argues the prosecution engaged in selective prosecution and disparate treatment under the law because it did not charge the other child involved in the incident. However, " '[t]he prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring.' " (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552.) So long as a prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute, and what charges to file, generally rests entirely in the prosecutor's discretion. (*People v. Peyton* (2014) 229 Cal.App.4th 1063, 1075.) We find no abuse of discretion here.

Minor further claims he was charged with a crime by adding six years to his age, but he cites to no portion of the record where this occurred. The petition originally alleged that minor committed a lewd and lascivious act on a child under the age of 14, that he possessed child pornography showing a person under the age of 18 engaged in and simulating sexual conduct, that he committed petty theft, and that he possessed

alcohol as a minor.  At all relevant times during the proceedings, the juvenile court and counsel acknowledged that minor was 12 years old during the alleged offenses.

Minor argues that his third appointed counsel, attorney Adamson, improperly waived the issue of his capacity to understand the wrongfulness of his conduct under Penal Code section 26 during the plea hearing.  We disagree, because minor himself expressly waived any defenses he might have had.  The juvenile court expressly asked counsel whether he believed minor lacked sufficient capacity to understand the wrongful nature of his actions, and counsel informed the court that he did not.  Counsel then stipulated that minor had sufficient capacity under Penal Code section 26.  Lack of capacity was a defense to the charges.  (See Pen. Code, § 26 ["All persons are capable of committing crimes except those belonging to the following classes:  [¶]  One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness"].)  During the plea hearing the court specifically asked whether minor had discussed potential defenses to the charges with appointed counsel, and minor agreed that he had and was giving up his rights to present such defenses at trial by pleading no contest.

Minor asserts that, except for the police report, he was denied access to the evidence against him.  The record again belies his argument.  Minor's second appointed counsel, attorney Lanthier, confirmed during the *Marsden* hearing that the prosecution had disclosed evidence in the case to his office, and that Lanthier had made clear to minor that he had a right to view the evidence and could discuss it with father if he so chose.  To preserve client confidentiality and to encourage candid discussions with his client, Lanthier explained he preferred not to have parents present when viewing evidence or discussing the facts of a case with a juvenile client.  Lanthier also noted that he had tried to set a meeting with minor to go over the evidence and the case on multiple occasions, but father refused to allow minor to meet with Lanthier confidentially.  After Lanthier was relieved as counsel, the juvenile court appointed attorney Adamson at father's

15

request, partly because Adamson apparently told father he was more amenable to allowing parents to view evidence during a juvenile representation. Minor was not denied access to evidence in the case.

Minor's claim that he was subjected to involuntary servitude in violation of the Thirteenth Amendment because he was required to perform community service as a condition of probation is meritless. " 'The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.) To accomplish those ends, a juvenile court may order a juvenile under its jurisdiction to probation, and the court has wide discretion in selecting appropriate conditions and may impose and require any and all reasonable conditions of probation. (*Ibid.*; § 730, subd. (b).)

Here, under section 725, subdivision (a), the juvenile court placed minor on probation without adjudging him to be a ward of the court. As a condition of probation, the juvenile court imposed 30 hours of community service, with an additional 10 hours stayed, to be used for technical violations. At no time during the disposition hearing did minor object based on the Thirteenth Amendment, thereby forfeiting the issue on appeal. And, in any event, requiring minor to perform some hours of community service was reasonable and did not subject him to involuntary servitude. (See, e.g., §§ 727.5 [the juvenile court may order a minor who is found to be delinquent under section 601 to perform community service], 729.8 [community service may be required as condition of probation if a minor is found to be a person described by section 602 by reason of the unlawful possession, use, sale, or other furnishing a controlled substance on school grounds].)

Finally, minor contends the juvenile court improperly informed him that his juvenile court record would remain sealed, when in reality, police departments and other institutions do not actually destroy the records. Again, minor did not raise this objection below, so his claim is forfeited on appeal. Even if he had, the claim has no merit.

Juvenile case files, including reports of the probation officer, are confidential and disclosure of the records is strictly limited.  (See, e.g., § 827, subds. (a)(3), (e) [limiting access to confidential juvenile case files, including reports of the probation officer, pertaining to matters within the jurisdiction of the juvenile court under § 602].)  Moreover, if minor successfully completes probation under section 725, the juvenile court must order the petition dismissed and all pertinent records in the custody of the juvenile court, certain law enforcement agencies, the probation department and the Department of Justice to be sealed.  (§ 786, subd. (a).)  In such situations, the statute contemplates the eventual destruction of the pertinent records because it requires the juvenile court to send a copy of this order "to each agency and official named in the order, direct the agency or official to seal its records, *and specify a date by which the sealed records shall be destroyed*."  (§ 786, subd. (a), italics added.)  Moreover, when a petition is dismissed, "the arrest and other proceedings in the case shall be deemed not to have occurred and the person who was the subject of the petition may reply accordingly to an inquiry by employers, educational institutions, or other persons or entities regarding the arrest and proceedings in the case."  (§ 786, subd. (b).)

Having rejected minor's arguments and after independently reviewing the record, we find no arguable error that would result in a disposition more favorable to minor.

**DISPOSITION**

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
FEINBERG, J.

17